## Michael J. Cooney, Appellee, v. Chicago-Springfield Coal Company, Appellant.

MASTER AND SERVANT—*when risks are assumed.* A servant of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business in which he is engaged is conducted and its ordinary risks and hazards, and he will be presumed to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, apparent and obvious.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1907. Reversed, with finding of facts. Opinion filed April 21, 1908.

BROWN, WHEELER, BROWN & HAY, for appellant.

ALBERT SALZENSTEIN and T. J. CONDON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court,

This is an action in case brought by appellee against appellant for the recovery of damages for personal injuries alleged to have been received by the plaintiff through the alleged negligence of the defendant. The declaration, in substance, charges that defendant operated a coal mine, and that the plaintiff was a shot-firer in its employ; that it was its duty to use reasonable care to furnish the plaintiff a reasonably safe place to work; that it failed to do so, but permitted him to work and explode shots on January 7, 1907, in room 17 in one of its entries, where there was insufficient coal support between that room and room 16 adjoining, to prevent shots ignited in room 17 blowing through into room 16; that the defendant knew, or should, in the exercise of its duty, have known of this condition and warned the plaintiff; that he was ignorant thereof, and while in the exercise of due care and caution, after igniting shots in room 17 in the performance of his duty, went into room 16, and by reason of said insufficient coal support between the rooms, one of the shots blew through into room 16, causing the injury complained of, etc.

The defendant pleaded the general issue and a trial by jury resulted in a judgment in favor of the plaintiff for $400, to reverse which the defendant appeals. At the close of all the evidence the court overruled a motion by the defendant to direct a verdict in its favor.

The evidence discloses that at the time appellee was injured rooms 16 and 17 in appellant's mine, which were side by side, had been worked southward to a depth of about 100 feet. There was a cross-cut for ventilation connecting the two rooms about forty-five feet from the entry and at a point where the pillar between the rooms was three or four feet thick. From that

point, by reason of the passage of a "horseback" through the room it became narrower, being at the place where the "horseback" existed but about fifteen feet wide. After passing the "horseback" it widened until within ten feet from the face of the room, at which point it was about twenty-five feet in width. On the day of the accident, the miner, who had been working in room 17, had bored through the pillar near the face of the rooms to the depth of six feet, with the intention of making an air-hole through to room 16, and then filled the same with a wooden block. On the day he was injured and for six months prior thereto, appellee had been employed by appellant as a shot-firer. The evidence adduced in his behalf tended to show that about two o'clock in the afternoon of that day, he and his "buddy," one Solomon, as was their duty, examined the holes in rooms 16 and 17, and found the same to be properly drilled and safe to be discharged with powder. They then went to the bottom of the mine and there remained until all the miners had left the mine. At 4:30 o'clock in the afternoon they started to fire the shots that they had examined and at about 7:30 o'clock lighted three shots in room 17. They then waited in the completed cross-cut between rooms 16 and 17 until they heard three shots explode. About two minutes thereafter, Solomon went across room 16 to the cross-cut between rooms 15 and 16, while appellee went toward the face of the room 16 to light the shots to be fired there. When he was about twenty feet from the face, a fourth shot between rooms 16 and 17 exploded, which on account of insufficient support being left between rooms 16 and 17 to resist the concussion, blew through the place where the air-hole into room 16 had been started, striking the plaintiff and injuring him. They both testified that the mine was dark in rooms 16 and 17; that all the light given was from small miners' lamps carried on their caps, and that there was nothing to indicate that there was not at least sixteen feet of coal between rooms

16 and 17 at the place where the shots were drilled and fired; that it so appeared to them; that they had received no warning or notice that that apparent condition was not real. Solomon testified further that the next day after Cooney was injured, he measured the depth of the coal between rooms 16 and 17 at the proposed air-hole and found that the wall as it existed when Cooney fired the shot was but eight feet thick. He also testified that in his opinion the fourth shot was caused by the improper loading of one of the holes.

There was evidence adduced by the appellant which tended to show that when appellee inspected room 17, the miner working there called his attention to the hole in the pillar, told him that it was a "break-through" for an air-hole, and warned him to "look out."

It is insisted that the peremptory instruction offered by appellant should have been given for the reasons that there was no evidence in the record fairly tending to establish the negligence charged in the declaration; that the evidence was conclusive that the risk of injury to appellee was one of those assumed by him by reason of his employment; and that the injury was caused by the negligence of a fellow-servant.

The evidence fails to show and it is not charged in the declaration that the making of the air-hole was not necessary nor that the place selected therefor was an improper one for the purpose. Neither is it charged that appellant or its employes were negligent in drilling the other holes in the room or in tamping or loading the same, although there is evidence tending to show such was the case. The evidence does show, however, that by reason of the preparatory drilling, the body of coal left between the two rooms at the point in question was insufficient to prevent the blast of a shot discharged in room 17 from penetrating the pillar into room 16 and that the condition of room 17 was in consequence unsafe and dangerous to a shot-firer unaware of the existence of the hole. Such condition, however,

did not result from any breach of duty on the part of appellant, and the hazard was therefore one incident to appellee's employment, the risk of which he assumed. In such case the duty to warn him did not exist, inasmuch as he was of full age, possessed of ordinary intelligence and experienced as a miner and shot-firer. Moreover, if it be conceded that the dangerous condition was latent and known to appellant to be so, the duty to warn appellee would only arise in the event that he did not know of the dangerous condition, that the same would not have been obvious to a person of ordinary intelligence and that he had not equal means of knowledge with appellant. We are of opinion that the greater weight of the evidence fails to establish these propositions. Appellee, as has been said, was an experienced miner and shot-firer and had had eleven years' experience. It was his duty to inspect holes prepared by miners for shots and to fire them when in his opinion they were properly placed and prepared. He knew when he accepted his employment as shot-firer that his usual duties would require him to handle and work explosives, and fully appreciated the danger of being injured from firing shots, and that he would have to exercise great care to prevent an untimely explosion resulting in injury to himself and others. He also knew the statute required cross-cuts to be made for the purpose of ventilation; that room 17 had been worked through a "horseback" and that an air-hole was necessary; that in good mining a cross-cut is always driven just after going through a "horseback." Having inspected it before it was charged, he also knew that the hole was at a place from forty-five to fifty feet from the other cross-cut on the same rib. While he testified that he did not know that a cross-cut was being made, we are convinced that from his general experience, and knowledge of the foregoing facts, and the general physical surroundings, his opportunities for knowing the conditions and appreciating the danger attendant upon firing the shot, were equal to

those of appellant and that if he had not such knowledge, by the exercise of reasonable care he would have acquired the same.

It is a rule that an employe of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492.

For the reasons stated the judgment will be reversed with a finding of facts, to be incorporated in the judgment as follows: We find as facts that the risk and hazard of the injuries received by appellee was incident to his employment.

*Reversed with finding of facts.*